

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Railroad Commission of Texas
Austin, Texas

Gentlemen:

> Opinion No. 0-3107
> Re: Effect of provision in Crawford Truck Lines'
> interstate certificate restricting the certificate
> holder to the use of trucks owned by him.

You have handed us your file on Certificate No. 3084 issued to Russell C.
Crawford, dba Crawford Truck Lines on April 29, 1940, and in connection
therewith request our Opinion in response to these questions:

> " 1 - (a) May Crawford Truck Line, under the facts presented by the
> enclosed file in view of its limited Texas interstate common
> carrier certificate lawfully operate motor vehicle under lease,
> and
> (b) may said lines lawfully transfer this Railroad Commission's
> plates and indentification cards to such lease vehicles?

> " 2 - Does this Commission have the power to require an owner of Texas
> Interstate Common Carrier certificate under the facts and con-
> ditions presented by the file, to own the motor vehicles operated
> under such certificate, or should this Commission recognize lo-
> leases to the same extent as they are recognized by the Interstate
> Commerce Commission?

The certificate in question and its supporting order contain the provision
that "All equipment to be operated under authority herein granted is
restricted to that owned by the holder of such certificate and shall not
exceed seven trucks." Purely interstate operations are authorized, intrastate
services are prohibited. The order also contains the following:

> "THE COMMISSION FURTHER FINDS that the highways that the applicant proposes
> have heretofore been used by the applicant under his contract carrier
> permit, interstate, and that the highways are of such type of construction
> and in such state of repair and maintenance as will permit the traffic
> sought to be place thereon by the applicant without unnecessary damage
> and otherwise interfering with the general public using said highways
> for general highway purposes; that the applicant has furnished satis-
> factory proof of his financial responsibility; and that the equipment
> proposed to be used by the applicant complied with the laws of the
> State of Texas in regard to safety devices, dimensions, etc.

"THE COMMISSION  in issuing this order has not considered the matter
of convenience and necessity, nor the adequacy of the existing transpor-
tation facilities.  Therefore, after carefully considering the evidence,
the law and its own rules and regulations, the Commission is of the
opinion that the application should be granted, subject to the  limitations
and restrictions hereinafter set forth; and the Contract Carrier
Permit No. 11187, Interstate  should be cancelled.  Accordingly, it is
* * *"

Unless it can be gleaned from the quoted portion of the order there is nothing
in such order or elsewhere in the file which discloses the reason actuating
the Commission in placing such restriction in the certificate.  It has been
settled by the case of THOMPSON vs. MCDONALD, 95 Fed. (2) 937, certiorari
denied, and a number of opinions by our Courts  of Civil Appeals, error
denied in some of them, that to lawfully engage in a purely interstate motor
carrier operation one must obtain from the Railroad Commission of Texas a
certificate or permit evidencing a finding that the highways to be used will
be able to take the added traffic burden.  Hence, it is not difficult to
understand the reason upon which the restriction of this operation to seven
trucks was grounded. Had no limitation of this nature been placed in the
authority the operation may have presently emerged with a hundred or more
trucks, thus throwing on the highways authorized to be used a traffic  burden
many times greater than the Commission had in mind would be done when it
granted the certificate.  But, it seems to us that in granting this cer-
tificate the Commission must have found that these highways could adequately
handle as many as seven owned trucks and a leased truck is no greater burden
to the highway and will congest traffic no more than one which is owned by
the operator,  We are left to conclude that other considerations than highway
conditions and traffic safety must have produced the attempted restriction
to the use of trucks owned by Crawford.  As we understand the opinion  in
the McDonald case, supra, the Railroad Commission's jurisdiction over purely
interstate motor carrier operations is limited to considerations of highway
conditions and traffic safety.  It is our opinion therefore that the
restriction contained in this certificate is void insofar as it would prevent
the use of leased trucks.  Your question 1 (a) is answered in the affirmative.

By the above we do not mean to say that under no circumstances could the
Commission restrict  an interstate operation to trucks owned by the certificate
holder.  In some instances it may be that it could.  As an illustration;
suppose in a given case the Commission should not limit the number of trucks
which could be used, but believed that if the carrier should be permitted
to operate  leased trucks there would be certain seasons during which it
would glut the highways with leased trucks, believing also that any such
seasonal business wouldnot warrant the carrier in purchasing such equipment.
Under such circumstances, it is not at all certain that the Commission
might not be able to protect the highways against such undue traffic by
simply requiring that the carrier use only equipment owned by it.

Our answer to question 1 (b) is that such plates and identification cards
may be lawfully transferred with the Commission's permission.  However,

such permission must be obtained as is customarily done when it is desired to retire one vehicle and substitute another.

Answering question 2, it is our opinion that the Commission, should recognize such leases, provided the leased equipment is in compliance with the statutes and rules and regulations of the Railroad Commission. In other words, the Commission should permit the use of leased equipment if it would authorize the use of the same equipment were the same owned by Crawford.

You also request our opinion in response to the following question:

> "(3) Does the owner of a Texas Interstate Common    Carrier Certifi-
> cate have authority, so far as this Commission is concerned, to
> operate as a 'broker' as that term is used in the Federal Motor Carrier
> Act, if such owner be authorized by the Interstate Commerce Commission
> to act as a 'broker' as that term is used in said Federal Act?"

The licensing of interstate transportation brokers is provided for in Sec. 311, Title 49, U. S. C. A. It is therein provided that it shall be unlawful for a broker to "employ any carrier by motor vehicle who or which is not the lawful holder of an effective certificate or permit" issued by the Interstate Commerce Commission. As already noted herein, such interstate carriers must also have certificates or permits from the Railroad Commission evidencing a finding that the highways traversed by them will stand the traffice caused by the operation. If the carrier who performs the actual transportation at the instance of the broker has no authority from the Railroad Commission, then, of course, the operation is unlawful and both the carrier and broker are violating the motor carrier statute. But, we are of the opinion that the Commission may not interfere in the actions of a broker, licensed under the Federal Statute, in his arranging for freight to be transported purely in interstate commerce, where the actual transportation is to be performed by a carrier holding a certificate issued by the Railroad Commission authorizing use of the highways, and the act of transportation itself is within the certificate.

Yours very truly

ATTORNEY GENERAL OF TEXAS

GRL:ob

By s/ Glenn R. Lewis
                  Assistant

APPROVED MAY 21, 1941

s/ Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED: OPINION COMMITTEE

By      BWB      CHAIRMAN